**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

CREDIT SUISSE FIRST BOSTON LLC,      )
                                     )
          Plaintiff,                 )
                                     )
     v.                              )      No. 04 C 2142
                                     )
LEON A. GREENBLATT, III, RICHARD     )
O. NICHOLS and ANDREW A. JAHELKA,    )
                                     )
          Defendants.                )


**MEMORANDUM OPINION**

Before the court is defendants' motion to dismiss for failure to state a claim. For the reasons set forth below, the motion is denied.

**BACKGROUND**

Plaintiff Credit Suisse First Boston LLC ("CSFB") has brought this action to recover a debt allegedly incurred by defendants in a CSFB brokerage account. The following facts, drawn from the complaint and attached exhibits, are taken as true for purposes of this motion.

**The CSFB Account**

On or about April 24, 2001, defendants Leon A. Greenblatt, III, Richard O. Nichols and Andrew A. Jahelka opened a brokerage account with CSFB in the name of Repurchase Corporation. When opening the account, Nichols advised CSFB that Repurchase had $48 million in liquid assets. Defendants also provided CSFB with a

corporate resolution certifying, *inter alia*, that: (i) Jahelka was the President, Nichols was the Treasurer, and Greenblatt was the Secretary of Repurchase; and (ii) Jahelka, Nichols and Greenblatt were authorized to enter orders on behalf of Repurchase to purchase or sell securities.  The resolution was signed by each defendant. (See Compl., Ex. A.)

**The HRMI Transactions**

On May 15 and 16, 2001, Repurchase entered twenty-one separate orders for CSFB to purchase a total of 83,263 shares of Health Risk Management, Inc. ("HRMI") common stock.  CSFB placed the orders, at a cost of $720,272.35, and confirmed their execution by mailing trade confirmation slips to Repurchase.  Printed on each confirmation slip were terms and conditions that included the following:

> If this transaction is a purchase by you
> in a cash account and sufficient funds are
> not already in your account with us, it is
> agreed that you will make full payment for
> the securities described on the face hereof
> promptly and not later than settlement
> date, or at such earlier time payment may
> be demanded in accordance with the terms of
> this transaction and that you do not
> contemplate sale of such securities prior
> to making such payment . . . . If full
> payment for the securities purchased by you
> in this transaction is not received by us,
> or if securities sold by you in this
> transaction are not delivered to us in
> proper form on or after the first trading
> day after settlement date, we may at our
> opinion [sic] cancel or otherwise liquidate
> this transaction without notice to you,
> and you will be liable to us for any

> resulting loss, including, without
> limitation, all expenses, attorney's fees
> and other costs incurred by us and
> interest thereon.
>
> * * *
>
> Please report any error, omission or
> exception immediately to us at the address
> shown on the face of this confirmation.

(Compl., ¶ 14.)

In addition, on or about May 18, 2001, CSFB and Repurchase entered into a Customer Agreement that included the following provision:

> PAYMENT OF INDEBTEDNESS UPON DEMAND
> 5.      The undersigned shall at all times
> be liable for the payment upon demand of
> any debit balance or other obligations
> owing in any of the accounts of the
> undersigned with you and the undersigned
> shall be liable for any deficiency
> remaining in any such accounts in the
> event of the liquidation thereof, in whole
> or in part, by you or by the undersigned;
> and the undersigned shall make payment of
> such obligations and indebtedness upon
> demand.

(Compl., Ex. B.)

On May 17, 2001, defendants, through Repurchase, transferred to CSFB 363,737 shares of previously acquired HRMI stock. Upon information and belief, defendants intended to use these shares as collateral for a margin loan from CSFB. In turn, defendants intended to use the loan proceeds to pay for their purchases of HRMI shares.

Defendants' plans were foiled, however, when shares of HRMI

stopped trading on NASDAQ. On or about May 22, 2001, NASDAQ delisted HRMI due to its failure to timely file its Form 10-K annual report. Without a public market for the HRMI shares that defendants transferred to CSFB, the shares were illiquid and could not be used as collateral to secure a loan from CSFB. On information and belief, on or about August 7, 2001, HRMI filed a petition for Chapter 11 bankruptcy.

From September 28, 2001 through August 29, 2003, defendants made partial payments to CSFB for the purchases of HRMI stock. These payments, totaling $127,000, were made through various entities controlled and owned by defendants. Repurchase and defendants have not made any further payments.

**Greenblatt, HRMI and Repurchase**

Upon information and belief, at the time HRMI filed for bankruptcy, Greenblatt owned approximately 40% of HRMI's common stock, making him the company's single largest beneficial owner. Greenblatt acquired his stock by purchasing shares individually, through his wife, and through various "shell entities" that he owned or controlled. Greenblatt opened brokerage accounts at multiple firms, including CSFB, in the names of these shell entities and purchased and/or held HRMI shares in the accounts. According to CSFB, Greenblatt used the entities to shield against personal liability that could attach from speculative investment activity.

CSFB alleges that Repurchase was one such shell entity. On information and belief, Repurchase had no employees, products or services of its own, and did not observe ordinary corporate formalities. Contrary to the corporate resolution provided to CSFB, which listed Jahelka, Nichols and Greenblatt as officers of Repurchase, the company's 2000 and 2001 "annual reports" filed with the Illinois Secretary of State listed only Greenblatt as an officer of the company.[1] In addition, when asked at a deposition in other litigation whether either Jahelka or Nichols had any involvement with Repurchase, Greenblatt responded, "I don't think so." (That case also involved defendants' purchase of HRMI shares, but through another broker.) According to CSFB, then, Greenblatt was the sole officer of Repurchase and the corporate resolution was a sham.

CSFB also contends that Repurchase was undercapitalized. The 2000 and 2001 annual reports filed with the state disclose that Repurchase's "paid-in-capital" was only $1,000 for each of those years.[2] In addition, on information and belief, in April 2001,

---

[1] All companies incorporated in Illinois are required to file "Annual Reports" with the Illinois Secretary of State. The Annual Report discloses, among other things, the date of incorporation, the identity of corporate officers and directors, the number of shares authorized and issued, and the company's paid-in capital. (See Compl., ¶ 36.)

[2] "Paid-in capital" is defined under Illinois law as "the sum of the cash and other consideration received, less expenses, including commissions, paid or incurred by the corporation, in connection with the issuance of shares, plus any cash and other consideration contributed to the corporation by or on behalf of its shareholders,

Repurchase borrowed approximately $1,860,966 from another brokerage firm for the purpose of purchasing HRMI stock in a margin account. CSFB therefore claims that Repurchase lacked sufficient assets to satisfy its obligations to CSFB at the time the HRMI trades were executed, and defendants' representation that the company had liquid assets of $48 million was false.

**This Action**

On these alleged facts, CSFB has filed a six-count complaint alleging breach of oral contract (terms memorialized in trade confirmation slips) (Count I); breach of written contract (the Customer Agreement) (Count II); account stated (Count III); fraud (Count IV); piercing the corporate veil (Count V); and promissory estoppel (Count VI). Each count is asserted against all defendants. The complaint seeks compensatory damages in excess of $700,000, punitive damages and attorneys' fees.

Defendants have filed a joint motion to dismiss. In addition, defendants have filed a supplemental brief indicating that Repurchase, on September 3, 2004, filed a petition for Chapter 11 bankruptcy.

**DISCUSSION**

The purpose of a 12(b)(6) motion to dismiss is to test the

---

plus amounts added or transferred to paid-in capital by action of the board of directors or shareholders pursuant to a share dividend, share split, or otherwise, minus reductions as provided elsewhere in this Act." (Compl., ¶ 40 n. 2 (citing 805 ILCS § 5/1.80(j).)

sufficiency of the complaint, not to resolve the case on the merits. 5B Charles Alan Wright & Arthur R. Miller, <u>Federal Practice and Procedure</u> § 1356, at 354 (3d ed. 2004). When evaluating such a motion, the court must accept as true all factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor. <u>Hentosh v. Herman M. Finch Univ. of Health Sciences</u>, 167 F.3d 1170, 1173 (7th Cir. 1999); <u>Jang v. A.M. Miller & Assocs.</u>, 122 F.3d 480, 483 (7th Cir. 1997). Dismissal is appropriate only if "'it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations.'" <u>Ledford v. Sullivan</u>, 105 F.3d 354, 356 (7th Cir. 1997) (quoting <u>Hishon v. King & Spalding</u>, 467 U.S. 69, 73 (1984)); <u>Jones v. General Elec. Co.</u>, 87 F.3d 209, 211 (7th Cir.), <u>cert. denied</u>, 519 U.S. 1008 (1996).

**The Contract-Based Counts**

Defendants contend that the contract-based counts – Counts I, II, III, V and VI – should be dismissed because the alleged contracts were between CSFB and Repurchase, and not CSFB and defendants. It is true that the shareholders, officers and directors of a corporation are generally not liable for the corporation's debts and obligations. <u>See Cosgrove Distrib., Inc. v. Haff</u>, 343 Ill.App.3d 426, 428-29, 798 N.E.2d 139, 278 Ill.Dec.

292 (2003).[3]  However, liability may attach to shareholders and officers when there exists: "(1) a unity of interest and ownership that causes the separate personalities of the corporation and the individual to no longer exist; and (2) the presence of circumstances under which adherence to the fiction of a separate corporate existence would sanction a fraud, promote injustice or promote inequitable consequences." Id.  This exception, known as "piercing the corporate veil," is the basis for liability advanced by CSFB.  And the fact that defendants did not personally guarantee Repurchase's obligations is irrelevant to a "piercing" analysis.  Indeed, if defendants *had* executed the contracts in their personal capacity, there would be no need to pierce the corporate veil.

Defendants advance two more arguments that are also without merit.  First, defendants argue that CSFB's veil-piercing allegations do not satisfy the requirements of Fed. R. Civ. P. 9(b).  Rule 9(b), however, does not apply to piercing allegations.  See United States ex rel. Bidani v. Lewis, 1999 WL 163053, at *2 (N.D. Ill. March 12, 1999); Kruse v. Aamed, Inc., 1997 WL 102528, at *4 (N.D. Ill. March 4, 1997).  In any event, CSFB's piercing allegations do not appear to be a "fishing expedition," and are more than adequate to give defendants a meaningful opportunity to respond.

---

[3]This is a diversity action, and all parties agree that Illinois law applies.

Next, defendants contend that the contract claims (all of which rely on a veil-piercing theory) cannot be pursued against the defendants unless and until Repurchase is found liable and unable to satisfy a judgment. Defendants appear to have abandoned the argument in view of Repurchase's bankruptcy. (<u>See</u> <u>Defs.' Supp. Br.</u>, p. 2 ("[T]here are grounds for dismissing the veil piercing counts that are independent of the prematurity argument.").) But even if Repurchase *were* still solvent, there would be no requirement that CSFB obtain a judgment against Repurchase, and wait for that judgment to go unpaid, before proceeding on a piercing claim against the individual defendants. <u>See</u> <u>Wachovia Securities LLC v. Neuhauser</u>, 2004 WL 2526390, at *10 (N.D. Ill. Nov. 5, 2004). Accordingly, defendants' motion to dismiss Counts I, II, III, V and VI is denied.

### The Fraud Count

Count IV contains two general allegations of fraud: Nichols's alleged misrepresentation that Repurchase had $48 million in liquid assets, and all defendants' alleged misrepresentation that each was an officer of the company. Defendants first contend that this count must be dismissed because it does not satisfy the requirements of Fed. R. Civ. P. 9(b). Rule 9(b) requires that "[i]n all averments of fraud . . ., the circumstances constituting fraud . . . shall be stated with particularity." Fed. R. Civ. P. 9(b). In our Circuit, this generally means pleading: "the identity

of the person making the misrepresentation, the time, place and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff." General Electric Capital Corp. v. Lease Resolution Corp., 128 F.3d 1074, 1078 (7th Cir. 1997) (citation omitted).

With no development whatsoever, defendants state that the fraud claim necessarily violates Rule 9(b) because it relies on allegations made on "information and belief." Defendants are wrong. Fraud allegations proffered on "information and belief" are not *per se* improper. But, they generally will comport with Rule 9(b) only if they are accompanied by an explanation as to why the facts are unavailable to plaintiff and a statement of the grounds for believing the existence of those facts. See Bankers Trust Co. v. Old Republic Insurance Co., 959 F.2d 677, 683-84 (7th Cir. 1992) ("Even before Rule 11 was amended to require [reasonable precomplaint inquiry], and *a fortiori* since, it was understood that the duty to plead the circumstances constituting fraud with particularity could not be fulfilled by pleading those circumstances on "information and belief" unless they were facts inaccessible to the plaintiff, in which event he had to plead the grounds for his suspicions.") (citations omitted).

The only allegation necessary to CSFB's fraud claim made on information and belief is that Repurchase, in fact, did not have liquid assets valued at $48 million at the time defendants opened

the account.  (See Compl., ¶ 41.)  By alleging that Repurchase's 2000 and 2001 annual reports disclosed paid-in capital of only $1,000, CSFB has articulated a reasonable basis for its suspicions that Nichols misrepresented the value of Repurchase's liquid assets.[4]  As for the second requirement, that a plaintiff state why the specific facts pled on information and belief are inaccessible, we will relax that requirement when the unavailability of the specific facts is obvious.  Simply, that information regarding the amount of Repurchase's liquid assets on April 24, 2001 (to the extent it differs from that represented by Nichols) is exclusively within defendants' control is not a proposition in need of explanation in an amended complaint.  CSFB's fraud allegation made on information and belief meets the requirements of Rule 9(b).

Defendants also argue that the fraud count fails to allege "proximate cause" for CSFB's alleged injury.  We disagree.  To state a claim for common law fraud under Illinois law, a plaintiff must allege: (i) a false statement of material fact; (ii) known or believed to be false by the party making it; (iii) intended to induce the other party to act; (iv) action by the other party in reliance on the truth of the statement; and (v) damages to the other party resulting from such reliance.  See Hillman v.

---

[4]CSFB also alleged that, in or around April 2001, Repurchase borrowed approximately $1.86 million from another brokerage firm for the purpose of purchasing shares of HRMI in a margin account. However, because this allegation is also made on "information and belief," without any substantiating details, we do not rely on it.

Resolution Trust Corp., 66 F.3d 141, 144 (7th Cir. 1995). Although "proximate cause" is not listed as a distinct element of a common law fraud claim, it is a well-settled principle of Illinois law that recovery in tort requires a causal connection between the defendant's conduct and the alleged injury. See Tylka v. Gerber Prods. Co., 1999 WL 495126, at *10 (N.D. Ill. July 1, 1999).

Here, CSFB claims that but for defendants' representations regarding Repurchase's available liquid assets and corporate form, CSFB would not have opened the account. Put another way, CSFB alleges that it would have acted differently, and not incurred the claimed damages, had it known the truth about Repurchase. These allegations sufficiently allege a causal nexus between the alleged fraud and the alleged injury. Of course, whether CSFB can *prove* that it would have declined to open the Repurchase account had it known the truth (assuming that misrepresentations in fact were made) is a question that awaits further development of the record, but for now, its allegations are sufficient to state a claim. Accordingly, Count IV will stand.

## **CONCLUSION**

For the foregoing reasons, defendants' motion to dismiss is denied. Discovery is to proceed forthwith. A status hearing is set for February 9, 2005.

DATE:    January 26, 2005

ENTER: _____

John E. Grady, United States District Judge